[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for removal of guardian, which was filed with the Probate Court for the District of Bristol on November 7, 1995, and transferred to the Superior Court for Juvenile Matters pursuant to CGS § 45a-623 on November 27, 1995. The applicant s, Dorothy B., the maternal great-aunt of the minor child Shazayla P., who was born on May 8, 1994. The application, which was filed pursuant to CGS § 45a-610, seeks the removal of Shazayla's mother, Latisha P., as the child's guardian. The application alleges that the minor child has been abandoned by Latisha P., in the sense that the parent failed to maintain a reasonable degree of interest, concern or responsibility for the minor child's welfare. It also alleges that Shazayla has been denied the care, guidance or control necessary for her physical, educational, moral or emotional well-being, as a result of acts of parental commission or omission.
PROCEDURAL HISTORY
Trial in this matter commenced on January 18, 1996 at the Superior Court for Juvenile Matters in Plainville. It continued on diverse dates at that court and at this venue until May 13, 1996 when the trial concluded. The applicant, Dorothy B., the respondent Latisha P., and the minor child were each represented by separate counsel throughout the proceeding. By agreement of the parties, the hearing on the order of temporary custody was consolidated with the contested hearing on the application for removal of guardian. On February 8, 1996, counsel for the respondent mother made an oral motion to the court that Shazayla's custody be returned to the mother, claiming that the applicant had failed to prove by a fair preponderance of the evidence that the parent's actions had placed the child in CT Page 4074-A immediate physical danger. The court denied the motion on that date and, pursuant to CGS § 45a-607, confirmed the ex parte order of the Bristol Probate Court awarding Shazayla's temporary custody to Dorothy B.
During trial, the applicant Dorothy B. testified, as did her daughter, Shonda B. Counsel for the minor child introduced the testimony of Elizabeth Gutierrez, then a social worker for the Department of Children and Families (DCF), and Gail Lawson, a DCF supervisor. The respondent, Latisha P., testified on her own behalf.
FACTUAL FINDINGS
The court, having carefully considered the testimony of the witnesses and the evidence introduced at trial, makes the following factual findings:
On or about October 6, 1995, Shonda B., the 24-year-old daughter of the applicant Dorothy B., received a telephone call concerning her infant cousin, Shazayla. The caller indicated that Shazayla had been beaten with a belt, was crying, and was in distress. Shonda went to the address where Shazayla was located. She learned that Latisha P. had gone away, leaving her daughter with Queen P., the child's maternal grandmother. The grandmother in turn left the child with a babysitter named Eloise R. The caller who telephoned Shonda was not Eloise R. Shonda took custody of Shazayla, who was then approximately 17 months old, from the caller. When she recovered the child, Shazayla was dirty, wearing a soiled diaper, and appeared sick. It was apparent to Shonda that Shazayla's diaper had not been changed in some time. There was no evidence that Shazayla had been assaulted or otherwise physically injured, but the child was ill and subsequently required medical treatment. The whereabouts of Latisha P. were unknown at this time.
After Shonda assumed de facto custody of Shazayla, she took the child to the home of Dorothy B., where Shazayla has remained to this date. DCF was notified. It was approximately two weeks later that Latisha P. finally contacted Shonda to inquire about Shazayla. Shortly thereafter, at the suggestion of DCF, Dorothy B. filed this guardianship action.
The October 1995 incident was not the first occasion when the mother departed without making appropriate arrangements for CT Page 4074-B Shazayla's care. The DCF study which was prepared for this case was admitted into evidence at trial. (See Child's Exhibit 1). It states in pertinent part:
 "On 7/30/95, the Department of Children and Families received a call from the Bristol Police stating that [mother] had left her 20-month-old infant in the maternal grandmother's home without permission. Grandparents woke up on 7/30/95 and found the child alone and the mother missing. The Bristol police officer, in his statement said the grandparents' apartment, where the infant was left, was in total disarray, and the place where the infant was sleeping was unkempt."
Evidence introduced at trial about the July 30th incident indicates that Latisha P. had gone to the beach then because she was "hot," and had not informed the grandmother beforehand that the child would be left in her care.
During her testimony, Latisha P. stated that she had gone to Hartford in October 1995 and had left her child with the maternal grandmother. She believed that the grandmother, or Eloise R., would care for Shazayla. Latisha P. testified that she went to Hartford to visit with friends because she "needed to get away" due to "a lot of personal things." She admitted that she was gone for two weeks. She claimed she left diapers for her daughter, and money to pay Eloise R. to babysit. Latisha also admitted that it was only after she returned from Hartford and went to her mother's home that she learned about what had transpired with Shazayla while she was absent.
ADJUDICATION
The respondent argues that her conduct does not constitute abandonment, or acts or omissions which evidence a lack of care. She contends that she was, in effect, merely taking a respite from her parenting responsibilities, and that she had made appropriate arrangements for the care of her daughter while she was gone. The court, however, does not agree.
When Shonda B. took emergency responsibility for Shazayla, the child was not with the maternal grandmother, nor with Eloise R. Shazayla was with a third party, who was so concerned about the child's condition and welfare that she called other relatives and requested intervention on the child's behalf. When Shonda found Shazayla, the baby was ill, dirty and wearing a soiled CT Page 4074-C diaper which had not been changed for an extended period of time. Latisha P.'s testimony that she only learned about this incident when she returned from Hartford two weeks later indicates that the parent never called to inquire about Shazayla, or check on her welfare, during the entire period she was away. Latisha P.'s disinterest in the care of her daughter resulted in Shazayla being shuttled from the grandmother, to Eloise R., to a third party. The child's condition when Shonda B. claimed her indicates that the designated caretakers had been neglectful in their treatment of the child, and that the child was in immediate physical danger until Dorothy B. and Shonda B. rendered assistance. Latisha P. selected inappropriate and inattentive caretakers, failed to make any inquiry about the whereabouts or care of her daughter, and was, in fact, oblivious to Shazayla and her needs during this 14-day period. As noted above, this was not the first time in recent history that the child's best interests took a back seat to the mother's recreational interests.
Based on all of the forgoing, and pursuant to CGS § 45a-610, the court finds proven by clear and convincing evidence that Latisha P. failed to maintain a reasonable degree or interest, concern and responsibility for her daughter and, accordingly, that Shazayla was abandoned by her parent. Pursuant to CGS §45a-610, the court also finds, based on clear and convincing evidence, that the minor child has been denied the care, guidance and control necessary for her physical and emotional well-being as a result of acts of parental commission or omission by Latisha P. It is further found that these acts are the result of conditions attributable to Latisha P.'s habits, misconduct and neglect, and that Latisha P.'s parental acts and deficiencies support the conclusion that this parent should not in the best interests of the minor child be permitted to exercise parental rights and duties at this time. For these reasons, the court hereby removes Latisha P. as the guardian of Shazayla P.
The application for removal of guardian which was filed in this matter indicates that the child's father is "unknown." However, the DCF social study which was introduced into evidence as Child's Exhibit 1 indicates that Shazayla's putative father is Carl M. The study reports that Mr. M. lives in Florida, address unknown. He allegedly does not support Shazayla, and never acknowledged paternity. The court finds that Mr. M. did not receive notice of this proceeding. Because of this, all orders being issued herein are without prejudice to the putative father's right to be heard. The Court, on its own motion, orders CT Page 4074-D that notice be given in this matter by publication in an appropriate Florida newspaper, advising Mr. M. of the pendency of this proceeding, and of his right to be heard. The court will schedule a further hearing in this matter on August 9, 1996 at this court at 10 a.m. At this hearing, the issues of notice, adjudication and disposition with respect to the putative father will be determined by the court.
DISPOSITION
Having removed Latisha P. as the minor child's guardian, the court must appoint another guardian for Shazayla. CGS § 45a-616
states in pertinent part:
 "If any minor has no parent or guardian of his or her person, the [court] may, on its own motion, appoint a guardian or co-guardians of the person of the minor, taking into consideration the standards provided in section 45a-617."
Per CGS § 45a-617, when the court selects a successor guardian, it shall consider "ability of the prospective guardian to meet, on a continuing day-to-day basis, the physical, emotional, moral and educational needs of the minor," the "minor's wishes, if he or she is of sufficient maturity and capable of forming an intelligent preference," and the "existence or nonexistence of an established relationship between the minor and the prospective guardian."
During the hearing, Shonda B. indicated her desire to be considered as a possible relative placement resource for her young cousin Shazayla. Both counsel for Dorothy B. and counsel for the minor child recommended that the court appoint Shonda as guardian for the child if the mother's guardianship rights were removed.
Shonda B. is the daughter of Dorothy B. and is the first cousin of Latisha P. She is, therefore, also a cousin of Latisha's daughter, Shazayla. Shonda testified that she is 24 years of age, unmarried, and has no children of her own. She is a college graduate with a bachelor of arts degree and has plans to pursue a graduate degree in the fall. She resides by herself in her own apartment, and has been employed for more than a year as a home health aid with the Bristol Visiting Nurse Association. Prior to that, she was employed by the Bristol Boys and Girls Club as the supervisor of a "latchkey" child care program for CT Page 4074-E children ages 4-16. She has assisted her mother, Dorothy B., in physically caring for Shazayla since the beginning of this case.
Although Shonda B. has considered the possibility of becoming a state-licensed DCF foster parent for Shazayla, she is also willing to assume guardianship of the child. Although DCF had some initial reservations about Shonda becoming guardian due to her age, single status, and employment, the agency has modified that position and would now consider Shonda as a relative placement resource. Although DCF has not yet visited Shonda's apartment, DCF supervisor Gail Lawson informed the court that DCF would be willing to visit her apartment and prepare a report on Shonda's suitability as guardian, if requested to do so by the court. Shonda B. testified in court that she understands that Shazayla is Latisha's child, and that guardianship would be restored to the mother if the court determines in the future that Latisha is capable of resuming that role.
The court finds that Shonda B. has exhibited a high degree of interest in Shazayla, has been actively involved in her care, and has had educational and employment experiences which have prepared her for the role of Shazayla's care giver. The court believes that of all the relatives available to assume the day-to-day care of this child, Shonda is the one best-suited for that responsibility. Accordingly, having carefully considered all of the forgoing, and the factors delineated in CGS § 45a-617, the court hereby appoints Shonda B. as guardian of Shazayla P.
VISITATION ORDERS AND COURT-APPROVED EXPECTATIONS
Counsel for the mother has articulately argued that many of Latisha P.'s parental shortcomings were the result of external factors beyond the respondent's control. There is merit to this assertion. It is hardly surprising that this 19-year old single parent, — a former neglected child herself — would lack the skills and resources necessary to properly nurture and care for her baby. It is also true that thus far in this case, Latisha P. has not received the type of reunification services frequently offered to parents in juvenile matters neglect cases. This is attributable, at least in part, to the fact that DCF did not initiate this proceeding, and is not a party in this matter. Nonetheless, it is the responsibility of the respondent herself to undertake affirmative steps to improve her situation, and that of her child, in order to make reunification a realistic possibility. CT Page 4074-F
It is the court's hope that with proper support and guidance, reunification between Latisha P. and Shazayla will be possible. The court appreciates DCF's willingness, as articulated during the hearing by Ms. Lawson, to secure parenting training for the mother. Hopefully, the mother will take advantage of this, and other opportunities to learn the skills she needs to properly parent Shazayla. To that end, the following orders and court approved expectations are set forth:
 Visitation: Pursuant to CGS § 45a-612, the court orders that the mother have weekly visitation one day each week with the child, initially for a period of four hours. The specific times, dates and places of these weekly visits shall be mutually agreed to by the mother and the guardian. It is the court's intention that the number and length of these visits be expanded if the respondent demonstrates faithful attendance and appropriate care of Shazayla when visits are scheduled. DCF is respectfully requested to conduct a home visit at Latisha P.'s residence to determine if it would be an appropriate site for visits between Shazayla and her mother. It is the expectation of the court that respondent will visit her child as often as she is permitted to do so.
 Counseling: It is expected that the respondent will enroll in and successfully complete a program of counseling and/or education which offers training in parental skills. DCF has offered to refer the respondent to such a program, and pay for same. It is expected that Latisha P. will cooperate with any and all referrals for evaluation and or counseling made for her by DCF.
 Income/Housing: It is expected that the respondent will secure and maintain adequate income and housing. It is further expected that the mother will permit DCF, and the child's attorney to visit her premises to ensure compliance with this expectation and that the premises are a suitable environment for visits with the minor child.
 Address: It is expected that the respondent will keep her attorney advised of her current address and telephone number.
 Substance Abuse: It is expected that the respondent will not abuse alcohol and/or illegal drugs. To the extent CT Page 4074-G that the respondent requires counseling and/or treatment in order to comply with this expectation, it is expected that the respondent will secure and successfully complete same.
 Violations of Law: It is expected that the respondent will avoid any future violations of federal, state or local criminal laws.
In order to monitor the respondent's cooperation with these expectations, an in-court review of this matter will be conducted at the Child Protection Session on August 9, 1996 at 10 a.m., when the issues concerning the putative father are also docketed. The presence of all parties and counsel at this review is required, and a representative of DCF familiar with this case is also respectfully requested to attend.
Dated at Middletown, Connecticut this 16th day of May, 1996.
DYER, J.